THE STATE OF NEBRASKA v. PETER J. LAWRENCE.

1. Incest: INDICTMENT. An indictment for incest contains two
   counts. The first charging the crime to have been committed on
   the first day of April, 1884. The second on the first day of
   April, 1882, and on divers other days and times *between* that date
   and the first day of April, 1884. On motion of the defense the
   district court required the district attorney to elect upon which
   count he would proceed to trial. *Held,* No error, being two
   distinct offenses.

2. ——: ——: EVIDENCE. In an indictment against a father
   for incest with his daughter, under section 204 of the criminal

code, it is not necessary in order to a conviction that the testimony should show that the father and daughter cohabited together as husband and wife, nor that it should appear that he held her out and treated her to others as his wife, nor that he was not living and cohabiting with his wife. If it is shown that the father and daughter lived together in the same family and house, and that he for any considerable length of time, and as a custom, rudely and licentiously had sexual intercourse with her in her room in the house, for that purpose asserting his authority as her parent, it will be sufficient to sustain a conviction.

BILL OF EXCEPTIONS from Platte county, POST, J., presiding, filed by district attorney under the provisions of section 515, criminal code.

*William Marshall, District Attorney*, for the state.

*McAllister Brothers* and *McFarland & Cowdry, contra.*

REESE, J.

The defendant was indicted under section 204 of the criminal code for the crime of incest. The indictment contained two counts. The first count charged the crime to have been committed on the first day of April, 1884. The second alleges the date of cohabitation to be on the 1st day of April, 1882, and on divers other days and times between that day and the first day of April, 1884.

On the trial the court, on motion of the defendant, required the prosecutor to elect as to which count of the indictment he would proceed upon. This ruling was excepted to and is assigned as error by the district attorney.

At the close of the evidence on the part of the prosecution a motion was made by the defendant to dismiss the case for the reason that the evidence did not sustain the charge as made in the indictment. This motion was sustained by the court and the cause dismissed without a verdict. To this the district attorney also excepted, and now

brings the case into this court on error under the provisions of section 515 *et seq.* of the criminal code.

We think it is quite true as claimed by plaintiff in error that the first count in the indictment contains sufficient to charge a crime under the section above alluded to, for, as said in Desty's Am. Crim. Law, sec. 88b, "if the parties for a single day live together in adulterous intercourse, intending its continuance, the offense is complete." It is equally true that the second count charges a crime, for the offense is a continuing one and may be laid with a *continuendo.*   *State v. Way,* 5 Neb., 283.

The objection to this indictment is, that the date fixed by the first count, to-wit, the first day of April, 1884, is not included in the time stated in the second count, to-wit, on the first day of April, 1882, and on divers other days and times *between* that date and the first day of April, 1884; thus excluding the last date.   It cannot, therefore, be said that these two counts charge the same offense, but in different forms to meet the evidence, which is permissible in criminal practice (1 Bishop on Criminal Procedure, § 420), but the dates being different, and the first count not being included in the second, as to time, it may be said that each count charges separate and distinct felonies which should not be joined in the same indictment, and for that reason we cannot say the court erred in compelling the election.   Especially is this true since it is a matter largely within the discretion of the trial court.   Id., § 454, and cases cited in note.   *Bailey v. The State,* 4 O. S., 440, Moore's (Ills.) Crim. Law, § 800, and cases there cited.

, The remaining question is one of much more importance and in which, to the mind of the writer, there is much difficulty.   It is a fundamental rule for the construction of statutes that the several parts of the law should be so construed as to give effect to the legislative intent, and to give some force and effect to every section and part of the law. With this rule before us we must adopt the views of plain-

tiff in error as to the construction of the section of the criminal law referred to, or ignore it entirely as an unmeaning section. We quote sections 202, 203, and 204 of the criminal code:

"Sec. 202. Marriages between parents and children, including grandparents and grandchildren of every degree, between brothers and sisters of the half as well as the whole blood, and between uncles and nieces, aunts and nephews, are declared to be incestuous and absolutely void. This section shall extend to illegitimate as well as legitimate children and relations.

"Sec. 203. Persons within the degrees of consanguinity within which marriages are declared by the preceding section to be incestuous and void, who shall intermarry with each other, or who shall commit adultery or fornication with each other, or who shall lewdly and lasciviously cohabit with each other, shall be liable to indictment, and upon conviction be punished by imprisonment in the penitentiary not exceeding ten years.

"Sec. 204. If a father shall rudely and licentiously cohabit with his own daughter, the father shall, on conviction, be punished by confinement in the penitentiary for a term not exceeding twenty years."

The evidence introduced on the trial, together with the motion of defendant to dismiss the case and the ruling of the court, are thus stated in the abstract:

"The prosecution gave in evidence the testimony of Cornelia Davis as follows:

"'On the 31st of March, 1885, my name was Cornelia Davis. I was a married lady at that time. My name before marriage was Cornelia Lawrence. My age is 19 years. I am acquainted with Peter J. Lawrence, the defendant. He is my father. I have lived in this state four years, with my father most of the time, as his daughter and member of the family. He always claimed me for his daughter.'

" Here at this stage of the case the defendant asks that the prosecution elect upon which of the two counts in the indictment he will prosecute. The motion was sustained by the court, and the district attorney excepts.

" 'Between the 1st day of April, 1882, and the 1st day of April, 1884, I was living in this state at my father's house. My father was living there at the same time, together in one family, in Platte county, and state of Nebraska. My father was a married man, living with his wife, and she with him, and I was his daughter living there at home, as daughters live with their parents. My father and mother occupied one room and I another room. Between April 1st, 1882, and April 1st, 1884, my father did something improper to me—the same as to his wife. During that period my father had sexual intercourse with me—sometimes two or three times a week and sometimes not for a month or two, and this continued in that way throughout this period between the first day of April, 1882, and the first day of April, 1884, at his own house in Platte county, Nebraska. This sexual intercourse took place sometimes one time of day and sometimes another, sometimes on the bed and sometimes on the floor. The way this sexual intercourse came about he told me I should do it, and he should do as he had a mind to do with me. He said I was his child and the law gave him the right to do as he pleased with me. He said it was nobody's business but his own. He said other men did the same, but their girls didn't tell of it and that I shouldn't. He would swear at me and said I shouldn't tell of it.'

" CROSS-EXAMINATION.

" 'I don't think there was any time between the 1st day of April, 1882 and 1884, in which my father and mother were not living and cohabiting together in the same house. I was simply living at home because that was my home and with my father and step-mother. I had a room to sleep

in.　I worked around the house the same as I always did. My room was just across the hall from my father's and mother's room.　My step-mother was there most of the while.　My father held her out to the community as his wife and treated her as his wife.　They slept together in the same bed.'

"The district attorney announces that the further evidence in this case will be cumulative.　The state and defendant both rest.

"The defendant moves to dismiss the case for the reason that the facts in evidence do not sustain the offense charged in the indictment.

"The motion is sustained and the district attorney excepts.

"And thereupon the court rendered the following judgment : 'And the trial proceeded, and the jury having heard the evidence on the part of the prosecution, the defendant thereupon moves the court to dismiss this case on the ground that the facts given in evidence by the prosecution do not sustain the offense charged in the indictment, and the court being fully advised in the premises doth on consideration thereof sustain the same, to which ruling of the court the district attorney excepts and gives notice that he will file in the supreme court a bill of exceptions in this case, and thereupon it is ordered that this case be and the same is hereby dismissed.'"

By the foregoing it will be seen that while the witness and daughter resided with the defendant it was not in any other capacity, so far as outward manifestations and representations were concerned, than as a member of his family, and not as his wife, he having a wife residing with him at that time.

The contention of the defendant is, that the meaning of the word "cohabit," in section 204, is that of living together as husband and wife, and to this view the district court gave its adherence in deciding the motion to dis-

miss.   A number of cases are cited, and such cases are numerous wherein it is so held by very respectable courts under the facts and circumstances before them.   And indeed we think that the great majority of courts and text writers have so held; and we think when the word is used in its strict, legal sense that is its proper definition, and such has been the holding of this court.   *The State v. Way*, 5 Neb., 283.   In support of this general definition the following cases may be cited :   *Calef v. Calef*, 54 Me., 365.   *Galor v. McHenry*, 15 Ind., 383.   *Sullivan v. The State*, 32 Ark., 190.   *Miner v. The People*, 58 Ills., 60.

But it is insisted by plaintiff in error that this meaning cannot be applied to the word in the sense in which it is used in section 204, as by the use of this meaning the section is rendered wholly nugatory, as section 203 includes all that would be included in both sections.   It is further insisted that every definition given by the cases above cited are applicable to section 203, and therefore give no light in the construction of 204.

It must first be observed that in the definition of the word as furnished by the decisions cited and as used in section 203, the act of cohabitation or "living together as husband and wife" involves the act of both parties to the incestuous intercourse.   If they "lewdly and lasciviously cohabit with each other," is the language of the section. The cohabitation must be lewd and lascivious upon the part of both.   The term lewd as used in the section above referred to is defined by Webster as "given to the unlawful indulgence of lust, dissolute, lustful, filthy, proceeding from unlawful lust as lewd actions."   Lewdly, "with the unlawful indulgence of lust; lustfully."   Lascivious is defined by the same author as, "loose; wanton, lewd, lustful, as lascivious desires; lascivious eyes; tending to produce voluptuous or lewd emotions."   Lasciviously, "in a lascivious manner, loosely, wantonly, lewdly."

The provisions of section 204 are limited to the acts of

but one—the father.    It is provided that if he shall "rudely and licentiously cohabit with his own daughter" he shall be punished in the manner pointed out in the section.    The word "rudely" is also defined, as applicable to this section, as "in a rude manner, coarsely,  *    *    uncivilly, violently."    Licentiously, "in a licentious manner, freely, loosely, dissolutely."

From a comparison of the qualifying words used in these sections but little light can be obtained, and but little distinction can be drawn except as to the word "rudely," which occurs in section 204, the definition of which in the sense used must be, coarsely, uncivilly, violently.

The word "cohabit" is given two definitions, both of which we will notice.    1st, "To dwell with, to inhabit, or reside in company, or in the same place or country."    2d, "To dwell or live together as man and wife."    It is from the Latin word *cohabitare, co,* for con (with,) and *habitare,* to dwell.    In Zells' Encyclopedia and Dictionary it is defined as, "to dwell or live together; to dwell with or live live together; to inhabit and abide in company in the same place.    2d, To live together as husband and wife, though not legally married."

As we have seen, the second or last definition given to this word by the authors above quoted is the sense in which it is generally used when the strict legal meaning is applied. As in Bouvier's Law Dictionary it is defined thus: "To live in the same house, claiming to be married."    But he adds, "the word does not include in its signification necessarily the occupying the same bed.    1 Hagg. Cons., 144; 4 Paige, ch. 425; though the word is popularly, and sometimes in statutes, used in the latter sense.    20 Mo., 210; Bish. Marr. and Div., § 506n.    To live together in the same house.    Used with reference to the relation of the parties to each other as husband and wife or otherwise.    Used of sisters or other members of the same family, or of persons not of the same family occupying the same house.    2 Vern., ch. 323; Bish.

Marr. and Div., 506n." But, as before stated, if we apply the strict legal meaning to the word in both sections, it must be apparent that section 204 was enacted to no purpose whatever, as it must be conceded that the same crime, so far as the father is concerned, would be described in each section, and the lighter punishment (that provided in section 203) would have to be applied. To the mind of the writer it is quite clear that the legislature intended to reach two classes or kinds of cases. By section 203, where the parties were equally guilty, where they cohabited with *each other* in the sense and under the circumstances hereinbefore stated. By the succeeding section, where the father and daughter lived together in the same house and family, and where the father rudely (coarsely, uncivilly, violently) and licentiously (loosely, dissolutely) cohabits with the daughter. Or in other words where the cohabitation or dwelling on the part of the father is characterized by the condition suggested by the qualifying words. Or where by the exercise of the parental authority with which he is clothed by law and social life he compels her to submit to his amorous embraces, and thus prostitutes her life to the satisfaction of his beastly desires. Within the meaning of this section, if the father of two daughters, if his wife be dead or they be separated, should live—dwell—with them in the same house, and should compel both to cohabit with him in the sense of submitting to his passions, although he could not hold them out to the world as wives, there being two, yet would he be any the less guilty by the fact of there being two? Most certainly not.

If the section under consideration was not intended to apply to cases like the one at bar, we are driven not only to the conclusion that the law-maker had no purpose in view in enacting it, but that there is no law providing a punishment for such cases.

In *Delany v. The People*, 10 Mich., 241, under a statute which made it a crime for " any man and woman, not

being married to each other," to "lewdly and lasciviously associate and cohabit together," it was held that the offense was a joint one, of which both parties must be guilty or neither, and that both must be joined as defendants, and that an information charging the man alone could not be sustained.    The same was held in a case of incest in Indiana.    *Baumer v. The State*, 49 Ind., 544.    See also *The State v. Byron*, 20 Mo., 210.    The application of this rule to this case if prosecuted under section 203 would render a conviction impossible.

We have been unable to find a similar statute in any state, save in Illinois, which is identical with section 204, and and from which 204 has been copied.    It has existed in that state for more than forty years, but has not received a construction by the supreme court of that state with reference to the question presented here.    By giving it the construction here given effect will be given to it, and we think such construction should be given—can conceive of no reason why it should not be, and therefore hold that the district court should have submitted the case to the jury upon the testimony.

JUDGMENT ACCORDINGLY.

THE other judges concur.