Donald **MORGAN** et al.,
Plaintiffs,

v.

**CITY OF DETROIT**, a Michigan Municipal Corporation, et al.,
Defendants.

Civ. No. 74–70855.

United States District Court,
E. D. Michigan, S. D.

Feb. 24, 1975.

Bruce L. Randall, Margate, Fla., for plaintiffs.

Nansi Irene Rowe, Maureen P. Reilly, Asst. Corp. Counsel, Detroit, Mich., for the City of Detroit.

OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENNEDY, District Judge.

This is a civil rights action which raises novel constitutional challenges to several ordinances of the City of Detroit.

Two of the plaintiffs, DONALD MORGAN and MARVIN RIELI, are owners of Detroit business establishments which were operated as a massage parlor and a nude photographic studio. The remaining plaintiffs were employees of these two establishments. Plaintiff-owners have been convicted of municipal ordinance violations of operating a business establishment without a certificate of occupancy, operating a massage parlor without a license, and operating the premises for purposes of prostitution. Further, both premises have been deter-mined to be public nuisances in Wayne County Circuit Court and have been ordered padlocked. Several of the female employees of these two establishments have been arrested at the establishments and convicted of accosting and soliciting in violation of City Ordinance 39–1–52.

Plaintiffs' complaint seeks damages, injunctive, and declaratory relief alleging that several raids were conducted on the two establishments and arrests made under ordinances, which on their face are unconstitutional.

A hearing was held on December 16, 1974, on plaintiffs' Motion for Preliminary Injunction and Declaratory Judgment and defendants' Motion for Summary Judgment. Plaintiffs' attorney stated in oral argument that claims relating to certain ordinances would not be pursued. A subsequent letter to the Court by plaintiffs' attorney confirmed this statement and a voluntary dismissal as to these claims was entered January 6, 1975. Only claims relating to the accosting and soliciting ordinance and the massage parlor ordinance remain.

■ Inasmuch as the two premises owned by plaintiffs have been padlocked for one year as public nuisances, and there is no evidence any of the plaintiff-employees are now employed in similar establishments, plaintiffs have failed to show any irreparable harm that will result to any of them if defendants are not enjoined from enforcing the questioned ordinances. The Motion for Preliminary Injunction is, therefore, denied.

The demands for a permanent injunction and damages hinge on the constitutionality of the ordinances. No claim is made that probable cause did not exist for the arrests or that excessive force was used by the police, only that arrests were made under unconstitutional ordinances. The liability of the individual defendants for damages and the Motion for Declaratory Relief distill to the same issues: the constitutional validity of the two ordinances.

## I.

The City of Detroit accosting and soliciting ordinance states:

It shall be unlawful for any person to accost, solicit or invite another in any public place or in or from any building or vehicle by word, gesture or any other means to commit or afford an opportunity to commit fornication or prostitution or to do any other lewd immoral act. It shall be unlawful for any male person to engage or offer to engage the services of a female person for the purposes of prostitution, lewdness or assignation, by the payment in money or other forms of consideration. It shall be unlawful for any person to loiter in a house of ill fame or prostitution or place where prostitution or lewdness is practiced, encouraged or allowed. [Section 39–1–52 Ordinances of the City of Detroit].

Plaintiffs mount a five-fold challenge to the ordinance: the ordinance violates the right of freedom of speech, the right of privacy, the Eighth Amendment Cruel and Unusual punishment, the Equal Protection Clause, and is unconstitutionally vague and overbroad.

### Right of Privacy

The right of privacy first enunciated in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) in the context of the marital relationship has been extended by the Supreme Court to the right to be free from unwarranted governmental intrusion generally. As Justice Brennan stated in Eisenstadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972): "[i]f the right of privacy means anything, it is the right of the *individual*, married or single, to be free from unwarranted governmental intrusion . . . ."

■ The right of privacy in order to encompass protected acts between two individuals necessarily presupposes consent between them. Stated succinctly, the right of privacy prohibits the state from proscribing activity conducted in private between consenting individuals where no overriding state interest can be shown.

■ While it may be true that the completed acts of prostitution, fornication and adultery are consensual, the crime of accosting and soliciting is not since the party accosted or solicited cannot by definition have yet consented and is, therefore, not protected by the right of privacy.

The ordinance is narrowly drawn so as to include only accosting and soliciting "in any public place or in or from any building or vehicle." The Court cannot make the assumption that everyone accosted in a public place will consent to a prostitute's solicitations. Even limited to the facts of the instant case, such an assumption is unwarranted.

The premise that anyone who enters a massage parlor is thereby consenting to being solicited for prostitution is belied by the fact that where, as here, arrests were made, the persons solicited were police officers. There is no claim that the officers entrapped the employees into solicitation. The solicitations were indiscriminate to anyone who entered the premises including Detroit police officers.

### First Amendment

■■ Plaintiffs claim that they are being denied their First Amendment right of freedom of speech because the accosting and soliciting law impinges on pure communication. They point out that there is no crime of prostitution in either the City of Detroit or the State of Michigan. The Court notes also that while adultery is a crime in Michigan, there is no crime of fornication. The question posed is whether the First Amendment prohibits criminal prosecution for soliciting someone to perform an act which is itself not criminal.

Plaintiffs read the freedom of speech clause too broadly. Various forms of speech have long been held to be without the protective umbrella of the First Amendment. The Supreme Court in Chaplinsky v. New Hampshire, 315 U.S.

568, 62 S.Ct. 766, 86 L.Ed. 1031 (1941) excepted "fighting words" from First Amendment protection, noting:

> [t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite to an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. [315 U.S. at 571, 62 S.Ct. at 769].

Plaintiffs have not indicated, nor is the Court aware, of any social value that will be advanced by the speech involved in accosting and soliciting to prostitution. While arguments may be advanced for the legalization of prostitution as socially desirable, these arguments advance no socially desirable effect from allowing persons to solicit for prostitution in public places.

In Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), the Court was concerned with the constitutionality of the Georgia obscenity laws as applied to films. Chief Justice Burger's comments are pertinent to the issue here:

> [w]here communication of ideas, protected by the First Amendment, is not involved, or the particular privacy of the home protected by *Stanley* [Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542], or any of the other "areas or zones" of constitutionally protected privacy, the mere fact that, as a consequence [of criminal laws], some human "utterances" or "thoughts" may be incidentally affected does not bar the State from acting to protect legitimate state interests.

Cf. Roth v. United States, *supra* [354 U.S. 476], at 483, 485–487 [77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)]; Beauharnais v. Illinois, 343 U.S. [250], at 256–257 [72 S.Ct. 725, 96 L.Ed. 919 (1952)] [413 U.S. at 67, 93 S.Ct. at 2640].

On the direct issue of whether an ordinance can prohibit speech which solicits conduct which is not unlawful, the Court noted:

> [c]ommercial exploitation of depictions, descriptions, or exhibitions of obscene conduct on commercial premises open to the adult public falls within a State's broad power to regulate commerce and protect the public environment. The issue in this context goes beyond whether someone, or even the majority, considers the conduct depicted as "wrong" or "sinful." The States have the power to make a morally neutral judgment that the public exhibition of obscene material, or commerce in such material, has a tendency to injure the community as a whole, to endanger the public safety, or to jeopardize in Chief Justice Warren's words, the States' "right . . . to maintain a decent society." Jacobellis v. Ohio, *supra*, 378 U. S. [184] at 199, 84 S.Ct. 1676, 12 L. Ed.2d 793 (1964) (dissenting opinion). [*Id.*, at 68–69, 93 S.Ct. at 2641].

A further reason for not according the speech incident to accosting and soliciting First Amendment protection is that it is essentially commercial in nature. Whatever else one might say about the act of accosting and soliciting, it is doubtlessly intended to sell a product. It is now well-settled that, while "freedom of communicating information and disseminating opinion" enjoys the fullest protection of the First Amendment, "the Constitution imposes no such restraint on government as respects purely commercial advertising." Valentine v. Chrestensen, 316 U.S. 52, 54, 62 S.Ct. 920, 921, 86 L.Ed. 1262 (1942). *See* Breard v. City of Alexandria, 341

U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); Banzhaf v. Federal Communications Commission, 132 U.S.App.D.C. 14, 405 F.2d 1082 (1968) cert. denied, 396 U.S. 842, 90 S.Ct. 50, 24 L.Ed.2d 93 (1969).

Again, although the Supreme Court has fashioned exceptions to this general rule, the exceptions are limited to areas of thought-provoking commercial speech: matters of public controversy, *see, e. g.,* New York Times v. Sullivan, 376 U.S. 254, note 25, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); artistic expression, *see e. g.,* Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); or deeply held personal beliefs, *see, e. g.,* United States v. Ballard, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944), none of which are applicable to the instant case.

*Equal Protection*

■■ Plaintiffs assert that the accosting and soliciting statute, which is admittedly non-discriminatory on its face, nevertheless is discriminatory as applied in that only females are arrested for the violation. While the Supreme Court has long held that discrimination in the administration of a statute apparently neutral on its face is a denial of the equal protection of the laws, *see* Yick Wo v. Hopkins, 118 U.S. 356, 6 S. Ct. 1064, 30 L.Ed. 220 (1886), the application of that doctrine is unwarranted here.

Plaintiffs' argument is that because only the prostitute is arrested for accosting and soliciting and not the customer, there is a denial of the Equal Protection Clause based on sex. This, of course, cannot be construed as the selective enforcement of the accosting and soliciting ordinance as the customer is normally the one who is accosted and thus does not come within the wording of the ordinance. There is no allegation that male prostitutes are not arrested for accosting or that male and female prostitutes are treated any differently when arrested for the crime.

Plaintiffs additionally argue that because a Detroit police program of employing female officers as decoys to arrest men who solicited them was subsequently abandoned, the ordinance is unconstitutional as applied.

Even if true, the constitutionality of the statute would not be jeopardized. The ordinance contains three sections. The second, which applies only to males, prohibits a male person from "engaging or offering to engage the services of a female person for the purpose of prostitution, lewdness or assignation by the payment in money or other forms of consideration." Insofar as this section only applies to males, plaintiffs have not challenged the section on equal protection grounds. Whether this section is being vigorously enforced is irrelevant to the question of the selective enforcement of the first section of the ordinance.

*Cruel and Unusual Punishment*

■ The maximum penalties for violation of the ordinance are 90 days in jail and a fine of $500. Plaintiffs allege that these penalties as applied violate the Eighth Amendment ban on cruel and unusual punishment.

Not all punishment is cruel and unusual. "[T]he very words 'cruel and unusual punishments imply condemnation of the arbitrary infliction of severe punishments' ". Furman v. Georgia, 408 U. S. 238, 274, 92 S.Ct. 2726, 2744, 33 L. Ed.2d 346 (1971) (Brennan, concurring).

The penalties here are neither cruel nor unusual. A 90-day term is not cruel in the sense that it treats "members of the human race as nonhumans, as objects to be toyed with and discarded." 408 U.S. at 273, 92 S.Ct. at 2743 (Brennan, concurring). To hold that a 90-day sentence is cruel punishment would be tantamount to holding all prison sentences cruel—a step unwarranted by history or logic.

Further, there is no substantial allegation that the sentences imposed for

accosting and soliciting are arbitrarily imposed. Plaintiffs' argument boils down to the assumption that, since prospective customers of prostitutes arrested for accosting are neither prosecuted nor receive jail terms, any sentence imposed is arbitrary. The Court has rejected the underlying assumption of this argument—that there has been alleged actual selective enforcement of the accosting and soliciting ordinance.

*Due Process*

 Plaintiffs finally contend that the ordinance is so vague and overbroad as to be violative of the Due Process Clause of the Fourteenth Amendment.

Plaintiffs point out that the first section of the ordinance does not require monetary consideration as the object of the soliciting. They contend that because of this omission the ordinance is overbroad. The Court is of the opinion, however, that if not otherwise prohibited by the Constitution, the City may proscribe accosting and soliciting where no money is sought. It is the nuisance aspect of accosting and soliciting which the City may seek to prohibit and which the City may regulate whether or not the accosting is done with the intent of remuneration.

In order to satisfy Due Process requirements with respect to vagueness, a criminal ordinance must give a person of average intelligence fair notice that his contemplated conduct is forbidden by the statute, United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1953), and be narrowly drawn so as not to encourage arbitrary and erratic arrests. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1939).

The terms "accosting and soliciting," "prostitution," and "fornication" are on their face precise and give fair notice of what conduct is forbidden. Only the term "other lewd immoral acts" must be subjected to closer scrutiny.

The Supreme Court has on several occasions used the word "lewd" in describing activity that was not deserving of First Amendment protection. *See, e. g.,* Chaplinsky v. New Hampshire, *supra,* 315 U.S. at 572, 62 S.Ct. 766; Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L. Ed.2d 419 (1973). The Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1956) upheld a federal obscenity statute proscribing material that was "obscene, lewd, lascivious, or filthy . . . or other publication of an indecent [nature]." The Court has never, however, defined the word "lewd" or intimated that an ordinance prohibiting "lewd" activity or publications would pass constitutional muster for sufficient specificity.

In determining whether an ordinance is unconstitutionally vague, courts have traditionally looked to the common law background for interpretation of broad terms. Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948). Although several Michigan statutes include the word "lewd", *see, e. g.* M.S.A. § 28.567, § 28.571, § 28.575(1), M.C.L.A. §§ 750.335, 750.339, 750.343a, there are no reported Michigan opinions defining the term.

In other jurisdictions the word lewd has been variously defined as meaning lustful, Shreveport v. Wilson, 145 La. 906, 83 So. 186 (1919); involving unlawful sexual desire, Jamison v. State, 117 Tenn. 58, 94 S.W. 675 (1906); dissolute, State v. Lawrence, 19 Neb. 307, 27 N.W. 126 (1886); filthy, State v. Lawrence, *supra;* indecent, State v. Rose, 147 La. 243, 84 So. 643 (1920); lascivious, Shreveport v. Wilson, *supra;* lecherous, State v. Rose, *supra;* and libidinous, Snow v. Witcher, 31 N.C. 346 (1848).

More recently courts have defined "lewd" as that form of immorality which has relation to sexual impurity or incontinence carried on in a wanton manner, State v. Prejean, 216 La. 1072, 45 So.2d 627 (1950); that form of immorality which has relation to sexual impurity, Slusser v. State, 155 Tex.Cr.R. 160, 232 S.W.2d 727 (1950); and, in a different sense, as lay, unlearned, unlet-

tered, wicked, lawless, bad, vicious, worthless, base, State v. Saibold, 213 La. 415, 34 So.2d 909 (1948).

It is evident from this brief sampling that "lewd" has no commonly accepted definition. This renders the ordinance suspect. But perhaps a more important fact is that whatever definition is accepted the standard is subjective in that whether an act is "lustful", "dissolute", "libidinous", or "lascivious" depends on the actor's social, moral, and cultural bias. There are no objective standards to measure whether proposed conduct is "lewd".

The word "immoral" is subject to the same objections. While presumably the ordinance proscribes only acts of sexual immorality no standards are offered as to what acts are immoral. Assuming there may be a rough consensus in our society as to certain acts that are beyond the pale of the moral, such generalizations are constitutionally too indefinite for criminal prohibition.

The combination of the two adjectives "lewd" and "immoral" does not supply the requisite definiteness to the proscription so that men of ordinary intelligence will know what acts are prohibited. Since it is not evident that the Common Council would not have enacted the remainder of the ordinance without the phrase "lewd immoral act", this invalid phrase is severed, and the remainder of the ordinance is left fully operative as law. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1967); Harrison v. National Ass'n. for the Advancement of Colored People, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

The granting of plaintiffs' Motion for Declaratory Judgment in this respect does not give them a cause of action for damages. The plaintiff-employees who were arrested under this ordinance were arrested under the definite portion of the ordinance—accosting and soliciting for prostitution. Plaintiffs do not allege that any arrests were made under the unconstitutionally vague portion.[1]

Plaintiffs finally contend that the City of Detroit ordinances (§§ 34–1–4, 34–1–1, and 34–1–10) concerning the licensing of massage parlors are unconstitutionally vague and overbroad.

■ The ordinances questioned by plaintiffs are not criminal in nature but relate solely to the regulation of massage parlor enterprises. Since plaintiffs do not allege in their complaint that they ever applied for, or were denied massage parlor licenses, they lack standing to attack the regulatory aspects of the ordinances. See generally Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L. Ed.2d 947 (1967). The issue of whether the mayor has unbridled discretion in issuing a license because of the ordinance (Section 34–1–10) requirement that a licensee be a "proper or suitable person," cannot be properly raised by these plaintiffs and do not relate to their claims of civil rights' violations.

The criminal ordinance making it a crime to operate a massage parlor without a license is straightforward:

"whenever in this code . . . any act is prohibited . . . or whenever in this code . . . the doing of any act is required . . ., where no specific penalty is provided therefor, any person upon conviction for the violation of any such provision of this code or any ordinance . . . shall be punished by a fine not exceeding $500.00 or by imprisonment in the City House of Correction, not to exceed 90 days or by both such fine and imprisonment in the discretion of the court, for each such offense. . . ." [Section 1–1–7].

An arresting officer is required to make only two decisions. Does the per-

1. Under the broad allegations of the complaint, however, plaintiffs have standing to seek declaratory relief as to this portion of the ordinance against future threatened prosecution. Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

son in question have a license and is the establishment a massage parlor.

Plaintiffs contend that the ordinance definition of "massage parlor" is so vague as to encourage arbitrary arrests for failure to obtain a license. It states:

> For the purpose of this chapter, a massage parlor is hereby defined to mean any building, room, place or establishment, other than a regularly licensed hospital or dispensary, where non-medical and non-surgical manipulative exercises are practiced upon the human body, for other than cosmetic or beautifying purposes, with or without the use of mechanical or bathing devices, by anyone not a physician or surgeon or of a similarly registered status. [Section 34–1–1 Ordinance of the City of Detroit].

Given a fair interpretation of the language of the ordinance it gives notice as to who must obtain a license or be subject to criminal penalties. " . . . [T]he Constitution does not require impossible standards;" all that is required is that the language "conveys sufficiently definite warning to the proscribed conduct when measured by common understanding and practices. . . ." United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1946). These words adequately mark " . . . boundaries sufficiently distinct for judges and juries fairly to administer the law . . . . That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. . . ." Id., at 7, 67 S.Ct. at 1542. See also United States v. Harriss, 347 U.S. 612, 624 n. 15, 74 S.Ct. 808, 98 L.Ed. 989 (1953).

For the foregoing reasons plaintiffs' Motion for Preliminary Injunction and Declaratory Judgment is denied.

Defendants' Motion for Summary Judgment is granted.

It is so ordered.