# IN RE APPEAL NO. 180, September Term, 1976,

FROM THE CIRCUIT COURT OF BALTIMORE
CITY, SITTING AS A JUVENILE COURT

[No. 51, September Term, 1976.]

*Decided November 4, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Phillip G. Dantes,* with whom was *Peter S. Smith* on the brief, for appellant.

*Henry E. Dugan, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher* and *Mark Cohen, State's Attorney* and *Assistant State's Attorney for Baltimore City,* respectively, on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that the word "solicit" as used in Maryland Code (1957) Art. 27, § 15 (e) making it unlawful "to solicit . . . for the purpose of prostitution" is to be read

in the terms of its ordinary meaning and not with reference to the common law offense of solicitation.

The facts are not in dispute. Appellant (the juvenile), then 15 years of age, approached the private car of a Baltimore City police officer, then on duty in plain clothes, and offered to perform normal sexual intercourse for $25.00. Following their conversation, they drove to a nearby motel. As they approached the lobby the police officer identified himself and placed the juvenile under arrest. Under Code (1974, 1975 Cum. Supp.) § 3-801 (J) Courts and Judicial Proceedings Article (in effect at the time of the act in question) a delinquent child was defined as "a child who has committed a delinquent act and requires guidance, treatment, or rehabilitation." Section 3-801 (I) defined a delinquent act as "an act which would be a crime if committed by an adult." A child is defined by § 3-801 (C) as "a person under the age of 18 years." [1] She was found to be a delinquent child by the Circuit Court of Baltimore City, Division for Juvenile Causes. In an effort to avoid such a judgment, her attorneys presented the interesting and esoteric argument in the trial court and again here that "the crime of solicitation requires the inducement of another to commit a crime" and that she "was not engaged in activity which constituted the solicitation of another to commit prostitution." "Prostitution" is defined by Art. 27, § 16 as "the offering or receiving of the body for sexual intercourse for hire."

The juvenile cites *Cherry v. State*, 18 Md. App. 252, 306 A. 2d 634 (1973). The defendant there had been convicted of soliciting for the "purpose of prostitution, lewdness and assignation" in violation of Art. 27, § 15 (e). The court had before it two constitutional attacks upon the conviction, one based upon an abridgment of the freedom of speech guaranteed by the First Amendment to the Constitution of the United States and one based on vagueness and over-breadth under the Fifth and Fourteenth Amendments. In the process of the opinion the court said that "[t]he

---

1. Similar definitions are found in §§ 3-801 (1), 3-801 (k), and 3-801 (d), respectively, in the 1976 Cum. Supp. by virtue of the amendments made by Chapter 463 of the Acts of 1976.

inchoate crimes generally are of recent vintage in the history of the common law [,] [t]he latest and least of these [being] solicitation." It then went on to say:

> "Its first formulation, as something distinct from a mere aspect in the law of attempts, was in *Rex v. Higgins* in 1801, 2 East 5, 102 Eng. Rep. 269. As persuasively declarative of pre-existing common law, *Rex v. Higgins* was followed by landmark decisions in *State v. Avery*, 7 Conn. 266, 18 Am. Dec. 105 (1828), and *Commonwealth v. Flagg*, 135 Mass. 545 (1883). Solicitation is now universally recognized in the United States as a part of Anglo-American common law. In Clark and Marshall, *Law of Crimes* (7th ed., 1967), its characteristics are well set out, at 219-223:
>
> > 'Solicitation is a distinct common-law misdemeanor in which the act forbidden consists of the accused person's parol or written efforts to activate another to commit a criminal offense. It is immaterial whether the solicitation is of any effect and whether the crime solicited is in fact committed. . .
> >
> > 'The gist of this offense is incitement. In brief, the gravamen of this common-law misdemeanor lay in counselling, enticing, or inducing another to commit a crime. . .
> >
> > 'Inciting or soliciting another to commit a crime is the act of the least magnitude which is punishable by the common law. In such offenses the actor does nothing himself but he urges others to violate the law. The necessity for punishing such persons is obvious, and such conduct is generally punished as a substantive crime, notwithstanding the solicitation does not move the party solicited to commit the offense.' " *Id.* at 257-58. (Footnote omitted.)

The juvenile argues that since "a person can only be

convicted of solicitation under § 15 (e) if the person being solicited . . . could be found guilty of committing the crimes of prostitution, lewdness, or assignation," and by accepting the offer the officer would not be engaging in the crime of prostitution, she does not come within the purview of the statute because she has not incited or solicited anyone to commit a crime.

We recently observed in *Howell v. State*, 278 Md. 389, 364 A. 2d 797 (1976), that one of "the cardinal rule[s] of statutory construction is to ascertain and carry out the real legislative intent and in ascertaining that intent the court considers the language of an enactment in its natural and ordinary signification."

As we see it there are three reasons for concluding that the juvenile is in error in her contentions: the use by the General Assembly of the word "solicit" in other statutes, the views of courts in other states, and the common meaning assigned to the term.

Code (1957, 1976 Repl. Vol.) Art. 2B, § 115 (a) makes it a crime for a "retail dealer . . . to employ any solicitor . . . for the purpose of soliciting, outside of the licensed place of business, orders for the sale of any alcoholic beverages within this State . . . ." Code (1957, 1976 Repl. Vol.) Art. 10, § 25 prohibits an attorney from "habitually go[ing] to the several jails, station houses and other places of criminal punishment with the view of soliciting the clientage of persons confined therein awaiting trial, without having been first sent for by such persons or by their friends . . . ." It also makes it unlawful to "solicit such clientage through sheriffs, constables, jailors or professional lawbreakers . . . ." Code (1957) Art. 27, § 13 states:

> "Whoever, for his own gain, and having no existing relationship or interest in the issue, directly or indirectly, solicits another to sue at law or in equity . . . ; or whoever, being an attorney at law, directly or indirectly, agrees to procure another to be employed as an expert witness, or otherwise, or procures another to be so employed in consideration of his so soliciting litigious business

or undertaking to solicit it . . . shall, upon conviction thereof, be punished by a fine of not more than $500 or by imprisonment in jail for not more than three months, or by both. Any solicitation as aforesaid shall be prima facie evidence that the person so soliciting is doing so for gain."

Code (1957, 1976 Repl. Vol. ) Art. 27, § 415 specifies that "[n]o person who may accompany or who may be in charge of, or who may have the custody of any musical instrument or device, shall solicit or accept any money or thing of value from any person upon any highway . . . or in any ordinary, saloon, tavern, restaurant, . . . or any other public place . . . unless such person shall solicit aid for purely charitable purposes." As used in each of those statutes the word "solicit" is used in its common, ordinary meaning and not with reference to the common law crime of solicitation.

In *Williams v. United States*, 110 F. 2d 554 (D. C. Cir. 1940), the court referred to the District of Columbia statute which "forbids 'any person to invite . . . any person . . . in or upon any avenue, street, road, highway, open space, alley, public square, or enclosure in the District of Columbia, to accompany . . . her . . . for the purpose of prostitution, or any other immoral or lewd purpose.' " The court said this statute "condemns solicitation in places of certain sorts." In *Bailey v. United States*, 98 F. 2d 306 (D. C. Cir. 1938), the same statute was before the court. It said that the appellant there "was convicted . . . of the offense of soliciting prostitution." It observed:

"Although this case was argued on the theory that appellant was charged with the offense of common prostitution, the fact is otherwise. She is charged under a statute which makes it an offense to invite, entice, or persuade a person in or upon a public street in the District of Columbia to accompany her to her residence for the purpose of prostitution or any other immoral or lewd purpose. She is not charged with the offense of prostitution.

> Perhaps a more common designation of the offense charged would be 'street-walking,' which is ordinarily punished as disorderly conduct or indecent behavior on the public highway." *Id.* at 307.

The court concluded:

> "In the present case the statute condemns only solicitation on the streets, as an act of public immorality, and has no reference to the doing of any other illicit or immoral act." *Id.* at 308.

*Morgan v. City of Detroit,* 389 F. Supp. 922 (E.D. Mich. 1975), concerned a civil rights action brought by operators and employees of a massage parlor and a nude photographic studio challenging a Detroit ordinance. The court said:

> "The City of Detroit accosting and soliciting ordinance states:
>
>> It shall be unlawful for any person to accost, solicit or invite another in any public place or in or from any building or vehicle by word, gesture or any other means to commit or afford an opportunity to commit fornication or prostitution or to do any other lewd immoral act. It shall be unlawful for any male person to engage or offer to engage the services of a female person for the purposes of prostitution, lewdness or assignation, by the payment in money or other forms of consideration. It shall be unlawful for any person to loiter in a house of ill fame or prostitution or place where prostitution or lewdness is practiced, encouraged or allowed. [Section 39-1-52 Ordinances of the City of Detroit.]"
>
> *Id.* at 926.

The plaintiffs there claimed "that they [were] being denied their First Amendment right of freedom of speech because the accosting and soliciting law impinges on pure communication. They point[ed] out that there is no crime of

prostitution in either the City of Detroit or the State of Michigan." The court said that "[t]he question posed [was] whether the First Amendment prohibits criminal prosecution for soliciting someone to perform an act which is itself not criminal." In rejecting this contention it observed that "[a] further reason for not according the speech incident to accosting and soliciting First Amendment protection is that it is essentially commercial in nature. Whatever else one might say about the act of accosting and soliciting, it is doubtlessly intended to sell a product." An equal protection argument was mounted on the ground "that because only the prostitute is arrested for accosting and soliciting and not the customer, there is a denial of the Equal Protection Clause based on sex," an argument which was rejected. In discussing the claim of the plaintiffs "that the ordinance [was] so vague and overbroad as to be violative of the Due Process Clause of the Fourteenth Amendment," the court observed that "[t]he terms 'accosting and soliciting,' 'prostitution,' and 'fornication' are on their face precise and give fair notice of what conduct is forbidden."

*In re Carey*, 57 Cal. App. 297, 207 P. 271 (3d App. D. 1922) concerned a San Francisco ordinance making it "unlawful for any person on any public street or highway or elsewhere to solicit . . . for the purpose of prostitution." The court said:

> "The specific charge against the petitioner is not that of carrying on the business of prostitution, but of soliciting for prostitution. She insists that a man, as readily as a woman, may commit this offense, and that, therefore, no discrimination in punishment can be tolerated. Even if this premise were sound, we are far from conceding the soundness of her conclusion. But the premise is not sound. The ordinance, it is true, applies to 'every person.' For the offense, if he could commit it, he would be sent to jail. In her case she might be committed to the farm for purposes of reformation.

But a man can no more commit the offense of soliciting for prostitution than that of carrying on the business of prostitution. In one sense, possibly, it may be said that a man who acts as a 'capper' for a house of prostitution is guilty of the crime of soliciting for it. But the crime committed by others than the principal is known as 'pandering' and the offender is known as a panderer, pimp, or procurer. His punishment is provided for in section 318 of the Penal Code. The words 'soliciting for prostitution' have a well understood and distinct meaning. They are held to mean the act of a fallen woman in hailing passers-by and soliciting them to patronize her business. They are so understood by police officers and all others who are called upon to labor with this class of people." *Id.* at 306-07.

An Illinois statute making it unlawful to "solicit to prostitution in any street, alley, park or other place in any city, village, or incorporated town in th[at] State" was before the court in *The People v. Rice*, 383 Ill. 584, 50 N.E.2d 711 (1943). The court said that the persons there involved were charged "with the offense of soliciting for prostitution." It described "[t]he first count in each indictment [as] charg[ing] the defendant with lewdly soliciting sexual intercourse and prostitution 'upon the public streets or other place of the City of Champaign.' " One of the contentions presented to the court was "that as the statute under which the indictments were drawn merely name[d] 'solicitation,' without defining the term, and since th[e] [Illinois] court ha[d] never defined it, it was incumbent on the People to describe fully the offense." The court responded to this contention by quoting definitions in Webster's International Dictionary and then saying:

"The definitions of 'solicit' and 'prostitution' are so well and universally understood as to require no further definition in the statute or charge to set forth the elements necessary to constitute the

offense intended to be punished. Defendants in error's contention that the language of the statute is not broad enough to apprise them of the particular offense charged is without merit." *Id.* at 588.

We regard it as significant that although these various decisions and the statutes with which they are concerned have mentioned "solicitation," "solicit," and "soliciting," with reference to acts similar to that committed by the juvenile here, not one has spoken in terms of the common law crime of solicitation. When to that is added the use made by the General Assembly in other statutes of similar words concerning other crimes which, in the context used, appear not to refer to the common law crime of solicitation, it becomes rather obvious that the common law crime of solicitation was not what the General Assembly had in mind when it enacted § 15 (e). If one had any lingering doubt on that subject it would be rapidly dissipated by reference to dictionary definitions. For example, the term "solicit" is defined in Webster's New International Dictionary of the English Language (2d Ed. unabridged 1959) as:

> "**8.** To tempt (a person); to lure on, esp. into evil; to attempt to seduce; *specif., of a woman, to accost (a man) for immoral purposes.*" (Emphasis added.)

The Random House Dictionary of the English Language (Unabridged ed. 1967) says of the term:

> "**4.** to accost or lure (someone) with immoral intentions, as by or on behalf of a prostitute."

It is interesting to note the definition of "solicitation" found in Funk & Wagnalls New Standard Dictionary of the English Language (1958):

> "**3.** *Law.* . . . (2) The inviting another to commit adultery or fornication."

This view is confirmed by examination of the word "solicit"

and its history in the Oxford English Dictionary (Compact ed. 1971):

"**4.** . . .

\* \* \*

"**d.** Of women: To accost and importune (men) for immoral purposes.

"**1710** STEELE *Tatler* No. 201 **P** 1 There are those [women] who betray the Innocent of their own Sex, and solicit the Lewd of ours. **1869** E. A. PARKES *Pract. Hygiene* (ed. 3) 498 Means could easily be adopted to prevent soldiers being solicited by women. **1887** *Spectator* 9 July 919/2 She was arrested by a constable, accused of soliciting gentlemen."

We hold that when the word "solicit" was used in the Maryland statute here under consideration it was not used with reference to the common law crime of solicitation, but in the common, ordinary meaning of the word as understood and used by the general public.

> *Judgment affirmed; appellant to pay the costs.*