# AMANDA LINDA REED *v.* STATE OF MARYLAND

[No. 187, September Term, 1977.]

*Decided January 11, 1978.*

The cause was argued before GILBERT, C. J., and MASON and LISS, JJ.

*Gerald A. Kroop* for appellant.

*W. Timothy Finan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Ara Crowe, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

As part of a campaign to rid Baltimore City of massage parlors engaged in illegal activities, the police raided an establishment known as Massage Parlor Incorporated and arrested among others, appellant, Amanda Linda Reed. She was convicted at a bench trial in the Criminal Court of Baltimore of occupying a structure for the purpose of prostitution, lewdness or assignation, in violation of Article 27, § 15 (b) of the Annotated Code of Maryland. On appeal appellant argues that the evidence was insufficient to support her conviction. We agree.

The only evidence presented at trial was the following statement of facts:

> On the 11th of November, 1976, at approximately four o'clock in the afternoon, Detective Leo F. Martin, a Baltimore City Police officer assigned to the Criminal Investigation Division Vice Unit and his expertise in matters of vice has been stipulated to, was on duty as a police officer and had occasion to go to the Massage Parlor Incorporated located at 14 through 16 North Gay Street. At the time he entered the premises he was approached by a young lady by the name of Miss Williams. She requested what he wanted. He advised her he wanted a massage. At that time he was advised the price for a massage would be $20.00. In the front of the room at that time was the defendant, Barbara Ann Baker [a co-defendant uninvolved in this appeal] whom Detective Martin would identify as the young lady seated next to my left in the blue. She identified herself as Terry. Detective Martin was advised that Terry would perform the requisite massage at which time the officer went back into a massage room and the defendant did then come in. At that time she commenced the massage and at which time she proposed a sexual act for the sum of $5.00. Detective Martin then identified himself as a police officer and placed the defendant under arrest. At that time other

vice officers, who were on the scene, responded to the premises pursuant to a prearranged signal and found on the premises was the [appellant] Amanda Reed, who Detective Martin would identify as the young lady seated at the far end of the trial table to my left, an employee of the Massage Parlor Incorporated. Both young ladies were then, of course, placed under arrest and transported.

The statute under which appellant was convicted, Article 27, § 15 (b) of the Annotated Code of Maryland, makes it unlawful:

To occupy any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation, or for any person to permit any place, structure, building or conveyance owned by him or under his control to be used for the purpose of prostitution, lewdness or assignation with knowledge or reasonable cause to know that the same is, or is to be, used for such purpose.

Appellant, in reliance on *Kolker v. State*, 230 Md. 157 (1962), argues that there was no evidence to show that she had "knowledge or reasonable cause to know that the premises were being used for the purpose of prostitution", as required by the statute. The State, on the other hand, contends that there was sufficient evidence that appellant had the requisite knowledge.

Based on the facts in this case, we think the State and appellant misapprehend the meaning of the statute. In *Kolker, supra,* the Court held that the proprietor of a nightclub, who supervised twenty-five female employees, knew or should have known that his establishment was a disorderly house, even though the evidence did not show he had specific knowledge of illegal conduct.

It is clear that the statute is aimed at two different types of offenders. First it applies to those who "*occupy* any place ... for the purpose of prostitution, lewdness or assignation." Secondly, it is directed at those who "permit any place ... *owned by him or under his control to be used* for the purpose

of prostitution, lewdness or assignation with the knowledge or reasonable cause to know that the same is, or is to be used for such purpose." (Emphasis supplied). Appellant here neither owned nor controlled the subject massage parlor. Therefore, her knowledge, or lack thereof, that the premises were used for the purpose of prostitution, lewdness or assignation, in and of itself, is of no controlling significance.

Consequently, we are concerned only with that part of the statute which makes it unlawful to occupy any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation. Construing this language of the statute, in its natural and ordinary signification, *In Re Appeal No. 180,* 278 Md. 443, 446 (1976), we conclude that the phrase "for the purpose of prostitution, lewdness or assignation" is a mens rea requirement modifying the verb "occupy".[1] "For the purpose of" is one of the phrases typically used in criminal statutes to indicate some "bad-mind" requirement. LaFave & Scott, *Criminal Law,* 192 (1972). For example, Section 2 of the Mann Act, 18 U.S.C.A. § 2421, makes it illegal for one to "knowingly [transport] in interstate or foreign commerce . . . any woman or girl *for the purpose of prostitution* or debauchery. . . ." (Emphasis supplied). The federal courts' interpretations of the aforementioned Mann Act phrase "for the purpose of prostitution" have required that the transportation "have for its object or be the means of effecting or facilitating the proscribed activities." *Mortensen v. United States,* 322 U. S. 369, 374 (1944). In *Yoder v. United States,* 80 F. 2d 665, 670 (10th Cir. 1935), the court describes "purpose" as:

> [T]he motive for an act, the intention which prompted it, and without which it would not have occurred. "Purpose" is an intent that motivates. Action is had because of one or more purposes; accompanying the purpose are intentions which are purely incidental and which exert no influence on the action. Counsel go from Oklahoma City to Denver to argue a case; when they leave, they have a fixed

---

1. We construe the verb "occupy" to mean being physically present. State v. Deppe, 286 S.W.2d 776, 779 (Mo. 1956).

intention to ride on the train, to eat, and to sleep. Yet no one would say the purpose of the trip was to eat.

Dictionary definitions of the word "purpose" indicate the following: Webster's Third New International Dictionary (Unabridged ed. 1971): "1.a: something that one sets before himself as an object to be attained; an end or aim to be kept in view in any plan, measure, exertion, or operation." The American Heritage Dictionary of the English Language (1973), "1. The object toward which one strives or for which something exists; goal; aim." The Random House Dictionary of the English Language (Unabridged ed. 1966), "2. an intended or desired result; end; aim; goal."

As determined earlier, the phrase "for the purpose of prostitution" modifies the verb "occupy". Thus, replacing the word "purpose" with some of the above noted definitions, the State must show that appellant's "aim" or "goal" for occupying the massage parlor was prostitution. Even if the agreed statement of facts showed that the premises were a house of ill fame, that alone would not prove that the presence of every employee was for the purpose of prostitution.[2] In the absence of any evidence establishing the purpose for which appellant occupied the premises, it is clear that the State has failed to prove a violation of the statute.

> *Judgment reversed.*
> *Costs to be paid by Mayor and City*
> *Council of Baltimore.*

---

2. Although the record does not disclose the types of employees in such an establishment, we hypothesize it may employ persons other than prostitutes, for example, cleaning persons.