STATE OF NORTH CAROLINA, on Relation of Peter Gilchrist, District
Attorney for the 26th Judicial District, Plaintiff v. JOHN F. HURLEY,
JR., ROBERT BLACKMON and PAR-A-DICE HEALTH CLINIC, Defend-
ant

No. 8026SC91

(Filed 29 August 1980)

1. **Nuisance § 10— action to abate public nuisance – sufficiency of complaint**

   A complaint in an action to abate a nuisance pursuant to G.S. Ch. 19, Art.
   1, is sufficient if it denominates the type of nuisance sought to be abated and
   the conduct complained of is declared a nuisance under the statute. There-
   fore, a complaint was sufficient to state a claim to abate a nuisance where it
   alleged that defendants maintained a place which is used in the regular
   course of business as a house of prostitution.

2. **Nuisance § 8.1— public nuisance – place operated for prostitution – statute not
   vague – meaning of prostitution**

   G.S. Ch. 19, Art. 1 is not unconstitutionally vague or overbroad in de-
   scribing one type of public nuisance as a place of business regularly operated
   or maintained for purposes of "prostitution," and as used in Ch. 19, Art. 1,
   "prostitution" includes the offering or receiving of the body, in return for a
   fee, for acts of vaginal intercourse, anal intercourse, fellatio, cunnilingus,
   masturbation, or physical contact with a person's genitals, pubic area, but-
   tocks or breasts.

3. **Nuisance § 10— action to abate public nuisance – bond not required for restrain-
   ing order – no arbitrary State action**

   A nuisance action brought by the district attorney acting for the State
   does not constitute arbitrary and capricious State action because the State
   is not required by G.S. 19-2.1 to post a bond as security against the possibility
   that a temporary restraining order or injunction might erroneously issue
   while a private citizen who institutes a nuisance action is required by G.S.
   19-2.1 to post such a bond, since a district attorney acts as an officer of the
   law for all citizens and is neither authorized nor expected to act in further-
   ance of private aims or ambitions.

4. **Constitutional Law § 23.1; Nuisance § 10— public nuisance – restraining order
   without bond or notice – no taking of property without due process**

   The fact that the district attorney, upon filing a nuisance complaint, can
   obtain a temporary restraining order pursuant to G.S. 19-2.3 without posting
   bond and without notice to the persons restrained does not constitute the
   taking of private property without due process or equal protection since the
   statute does not authorize the seizure or destruction of property but merely
   preserves the status quo until a hearing can be held; the statute establishes
   a procedure for the owner of the property in question immediately to chal-
   lenge the validity of the temporary restraining order and places the burden
   of its continuance on the district attorney; and the procedure mandated by

G.S. 1A-1, Rule 65(b) applies to the issuance of the temporary restraining order.

5. **Constitutional Law § 70; Nuisance § 10– action to abate public nuisance – general reputation of building or other place**

There is no merit in defendants' contention that the statute allowing the admission into evidence of the general reputation of the building or place allegedly constituting a public nuisance, G.S. 19-3(c), permits an unconstitutional taking of property in a trial by rumor, hearsay and innuendo and denies them their right of cross-examination.

6. **Constitutional Law § 18; Nuisance § 10– public nuisance statutes – application to place used for prostitution – no First Amendment violations**

Application of the public nuisance statutes, G.S. Ch. 19, Art. 1, to a place of business regularly operated or maintained for purposes of prostitution does not violate the right of the owner and his invitees to freedom of association as guaranteed by the First Amendment to the U.S. Constitution.

7. **Nuisance § 10– abatement of public nuisance – health clinic operated for prostitution**

The State's evidence was sufficient for the jury on the issue of whether defendant Par-A-Dice Health Clinic should be abated as a public nuisance on the ground that it was regularly operated or maintained as a house of prostitution where it tended to show that during the period from 30 July 1976 to 30 July 1978, at least seven different police officers dressed in civilian clothes visited the Par-A-Dice Health Clinic at various times; on each occasion a female employee described the types of massages available, quoted prices, led the officer to a room equipped with a table and mirrors, and told him to undress; thereafter, the same or a different female would come into the room and begin the massage; she would attempt to ascertain whether the customer was a police officer by asking questions about his occupation and requesting to see some identification; when satisfied that the customer was not a police officer, the masseuse solicited the customer for acts of intercourse or crime against nature for a fee which ranged from $30 to $80; officers made seven arrests at the Par-A-Dice Health Clinic for solicitation for crime against nature or prostitution and two arrests for masturbatory massage; twelve police officers testified that the Par-A-Dice Health Clinic had a reputation as a house of prostitution; and several officers testified that most of the females arrested for solicitation posted bond and returned to work at the Par-A-Dice.

8. **Nuisance § 10; Costs § 4.2; Attorneys at Law § 7.5– action to abate public nuisance – attorney and referee fees**

In an action in which the court abated the nuisance known as the Par-A-Dice Health Clinic on the ground that it was regularly operated or maintained as a house of prostitution, the court's findings supported its award as costs of abatement of a fee of $4,000 to plaintiff's attorney for his work through the trial, a fee of $707 to the referee appointed to determine the gross income received in the operation of the Par-A-Dice as a house of

prostitution, and an additional fee of $1,526 to plaintiff's attorney for work in determining the gross income and preparing the referee's report.

9. **Nuisance § 11– abatement of public nuisance – forfeiture of amount of gross income**

In an action in which the court abated the nuisance known as the Par-A-Dice Health Clinic because it was regularly operated or maintained for purposes of prostitution, the referee's findings showing that the total gross income generated by the operation of the Par-A-Dice from 1 July 1976 through 1 February 1979 was $43,650 were conclusive where defendants made no exceptions to the findings, and the findings supported the court's judgment ordering that the individual defendant forfeit the sum of $43,650 pursuant to G.S. 19-6 to the general funds of the city and county governments wherein the nuisance was located.

APPEAL by defendants from *Gavin, Judge,* and *Johnson, Judge.* Judgments entered 14 February 1979 and 5 September 1979 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals on 5 June 1980.

On 16 January 1979 the State, on relation of Peter Gilchrist, District Attorney for the 26th Judicial District, filed a complaint in the Superior Court of Mecklenburg County alleging that the defendant Par-A-Dice Health Clinic was being operated and maintained as a place "which in the regular course of business is used for the purpose of lewdness, assignation, and prostitution, . . ." The complaint further averred that the owners and operators of the subject premises either knew or in the exercise of reasonable diligence should have known that the premises were so used. Alleging that the real and personal property associated with the business constituted a "general and public nuisance," the complaint, among other relief requested, prayed that the defendants be permanently enjoined from maintaining and operating a nuisance on the premises.

On the same day the State moved pursuant to Chapter 19 of the General Statutes for a preliminary injunction "to abate the continuing nuisance" at the Par-A-Dice Health Clinic, and for a temporary restraining order to restrain the defendants "from removing or in any manner interfering with the personal property and contents of the place where the nuisance is alleged to exist" pending a determination on the merits. In support of the motion, the State offered the affidavit of Charlotte Police Offi-

cer D.R. Harkey, who in essence avowed that the Par-A-Dice is regularly operated as a house of prostitution. Thereupon, Judge Snepp issued an order wherein he found that probable cause existed to believe that a nuisance as defined by G.S. § 19-1 *et seq.* was being maintained at the business known as the Par-A-Dice Health Clinic. His order restrained the defendants from removing or interfering with the personal property of the premises, prohibited them from engaging in any prescribed conduct on or about the property, and directed the officer serving the order upon the defendants to "forthwith make and return unto the Court an inventory of the personal property and contents situated in the premises." The documents were served and the inventory completed the same day. No property was seized from the premises.

On 5 February 1979 defendants filed an answer denying the essential allegations of the complaint. They also filed a motion to dismiss the action pursuant to G.S. § 1A-1, Rule 12(b)(6), on the grounds that the plaintiff had failed to state a claim for relief for that their alleged conduct did not constitute a nuisance within the meaning of the statute, and that the statute is unconstitutionally vague and overbroad, denies due process in several respects, and has a "chilling" effect on "the right to meet, socialize, and assemble ..." The motion was denied.

Prior to trial the defendant Hurley, owner of the premises, entered a confession of judgment wherein he agreed to pay any costs assessed against and unsatisfied by the defendant Blackmon, operator of the Clinic, and to refrain from leasing any property to Blackmon "for use by him in any endeavor which is in violation" of any order entered against Blackmon.

At trial plaintiff's evidence tended to show the following:

Charlotte Policeman M.F. Green, working in an undercover capacity, went to the Par-A-Dice on 30 July 1976. While he was being massaged, Sherrill Duncan solicited him for the act of fellatio. She quoted a price of $65. Green arrested and booked her for soliciting for a crime against nature. She pleaded guilty to the lesser offense of soliciting for prostitution.

Green testified further that the Par-A-Dice has a reputation as being a "front" for a house of prostitution and that Sherrill Duncan has a reputation of being a prostitute.

Dressed in civilian clothes, Charlotte Policeman L.M. Cochrane, Jr. went to the Par-A-Dice on 9 July 1977 and was told by Miranda Renee and Jacqueline Bailey that he could have fellatio or intercourse for $45 although "there might be another girl [there] that would do it cheaper." Cochrane charged Renee and Bailey with soliciting for crime against nature. The charges were reduced to soliciting for prostitution. To Cochrane's knowledge, the Par-A-Dice "operates as a front for prostitution," and Bailey and Renee have reputations for being prostitutes.

On a visit to the Par-A-Dice on 30 July 1978, Officer D.R. Harkey, working as an undercover agent, received a "topless massage" for $20 which consisted of "rubbing on my chest, putting powder on my groin area, massaging my penis, and this sort of thing." During the massage the girl said, "Your time is running out. Is there anything else you want?" When he asked her what she meant, she responded, "Well, baby, you're going to have to tell me because you might be a cop and I'm not going to get busted for soliciting, . . ." Harkey arrested her for massage ordinance violation. He testified that the Clinic's reputation is as a front for prostitution.

On 4 September 1977 Sergeant L.J. Blake of the Charlotte Police Department dressed in casual clothes and drove to the Par-A-Dice in his personal car "with a cover officer parked close by." He paid $20 for a topless massage. As the girl, identified as Mary Brigman, rubbed his back, she asked him, "Would you like for me to finish up with the French or the hand relief." When he asked her what a French consisted of, she told him it was a "blow job" [fellatio] and that it would cost $30 more. He asked if he could get anything else, and she replied, "I only give straight sex or lay to preferred customers." Blake charged her with soliciting for a crime against nature, and she was convicted of soliciting for prostitution. He said her reputation is that of a prostitute and that the Par-A-Dice has a reputation as a house of prostitution.

Officer L.R. Snyder, dressed in civilian clothes, went to the Par-A-Dice on 12 May 1977. He paid $20 to June Carpenter for a topless massage. While she massaged him, she told him that for $80 he could get a "special," that is, a "half and half" [fellatio and vaginal intercourse] and anal intercourse. He arrested her and she pleaded guilty to solicitation for prostitution. Snyder said the reputation of the Par-A-Dice "is a place where you can go and purchase sex, ..."

On 4 April 1977 Angela Gardner solicited Officer S.C. Cook for fellatio for $40 or intercourse for $50. He arrested her for solicitation for crime against nature. Cook returned to the Par-A-Dice on 5 October 1977, was offered a masturbatory massage by Jacqueline Bailey, and arrested her for violation of the City massage parlor ordinance. He said the Clinic's reputation is that of a house of prostitution.

On 18 July 1978 Officer J.E. Sorrow, working undercover, was solicited by Rebecca Saunders for fellatio for $25 or "straight" intercourse for $20. She also told him he could get a "half and half" for $30. He arrested her for soliciting for crime against nature. When they arrived at the magistrate's office, the defendant Blackmon, who posted bond for Saunders, said to Officer Sorrow, "As long as you have been around, I thought all my girls knew you."

Four other officers testified that the Par-A-Dice has a reputation as a house of prostitution.

Defendants offered no evidence.

At the close of the plaintiff's evidence, the trial judge submitted the following issues to the jury which were answered by it as indicated:

1. Did the premises known as the Par-A-Dice Health Clinic ... constitute a nuisance within the meaning of General Statute 19-1 ... between the dates of July, 1976 and February, 1979?

ANSWER: YES

Gilchrist, District Attorney v. Hurley

2. Did the defendant, Robert Blackmon, have knowledge or reasonable ground, between the dates of July, 1976 and February 1979, to know of the nuisances carried on on the premises known as the Par-A-Dice Health Clinic ...?

ANSWER: YES

Judgment was entered on the verdict on 14 February 1979, ordering that the nuisance known as the Par-A-Dice Health Clinic be abated; permanently enjoining the defendant Blackmon from maintaining such nuisance; and ordering an accounting of all funds received by Blackmon in the operation of the Par-A-Dice as such nuisance, pursuant to G.S. § 19-6. The judgment further provided for the appointment of a referee to conduct the accounting and ordered that attorney's fees in the amount of $4,000 be paid the State's attorneys "for the prosecution of this case through the trial thereof, ..."

Thereafter, on 9 July 1979 the referee filed a detailed report which concluded that the total gross income generated by the operation of the Par-A-Dice from 1 July 1976 through 1 February 1979 was $43,650. Defendants filed no exceptions to the report. Plaintiff then moved for its adoption. On 5 September 1979 Judge Johnson, after a hearing, entered final judgment adopting the referee's report, ordering that the plaintiff recover $43,650 from the defendant Blackmon, setting the referee's fee at $707, and ordering that defendants pay additional attorney's fees of $1,526 to the State's attorneys.

To the entry of each judgment, defendants appealed.

*Rodney W. Seaford and Paul L. Whitfield for the plaintiff appellee.*

*Attorney General Edmisten, by Assistant Attorney General Donald W. Stephens, as amicus curiae for the State.*

*B.R. Batts, Keith M. Stroud, and J. Reid Potter, for the defendant appellants.*

HEDRICK, Judge.

[1] Defendants assign as error the denial of their motion to dismiss the action for its failure to state a claim for which relief can be granted. They argue first that the alleged conduct at the Par-A-Dice Health Clinic does not constitute a nuisance within the meaning of the statute. The statute under which these defendants were prosecuted in pertinent part proscribes the following conduct:

§19-1. *What are nuisances under this Chapter* — (a) The erection, establishment, continuance, maintenance, use, ownership or leasing of any building or place for the purpose of assignation, prostitution, gambling, illegal possession or sale of intoxicating liquors, illegal possession or sale of narcotic drugs ..., or illegal possession or sale of obscene or lewd matter, ...

Included among the types of nuisances catalogued in G.S. § 19-1.2 is the following:

(6) Every place which, as a regular course of business is used for the purposes of lewdness, assignation, gambling, the illegal possession or sale of intoxicating liquor, the illegal possession or sale of narcotic drugs ..., or prostitution, and every such place in or upon which acts of lewdness, assignation, gambling, the illegal possession or sale of intoxicating liquor, the illegal possession or sale of narcotic drugs ..., or prostitution, are held or occur.

Chapter 19 further directs that the action to abate the nuisance be commenced "by the filing of a verified complaint alleging the facts constituting the nuisance." G.S. § 19-2.2.

In the case before us the verified complaint contains the following pertinent paragraph:

8. That the plaintiff's relator is informed, believes, and therefore alleges that the said building and premises known as the Par-A-Dice Health Clinic is now, and for some considerable period of time prior to the filing of this Petition and Complaint has been, operated and maintained as a

Gilchrist, District Attorney v. Hurley

place which in the regular course of business is used for the purpose of lewdness, assignation, and prostitution, where the operators and patrons openly engage in illicit sex acts, prostitution, and the massage of private parts for hire as proscribed by Charlotte City Ordinances.

It must be remembered that the function of a motion to dismiss pursuant to G.S. § 1A-1, Rule 12(b)(6), is to test the legal sufficiency of the complaint, not the facts which support it. *White v. White*, 296 N.C. 661, 252 S.E. 2d 698 (1979); *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). The allegations of the complaint are treated as true, *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979), and the complaint is adequate if it gives the defendant sufficient notice of the nature and basis of plaintiff's claim to enable him to answer and to prepare for trial, and to show the type of case brought. *Redevelopment Commission v. Grimes*, 277 N.C. 634, 178 S.E. 2d 345 (1971); *Presnell v. Pell*, 39 N.C. App. 538, 251 S.E. 2d 692 (1979). This is precisely the concern to which section 19-2.2, *supra*, addresses itself: that is, a complaint in an action brought pursuant to Chapter 19 is sufficient so long as it denominates the type of nuisance the abatement of which is prayed for, and such conduct is declared a nuisance under the statute. It follows that the complaint in the present case is clearly sufficient to state a claim for which relief could be granted since it alleges the maintenance of a place which is used in the regular course of business as a house of prostitution. No more is necessary. Defendants' contentions that their motion to dismiss the complaint should have been granted because the alleged acts of prostitution "were much too few and far between" to constitute a regular course of business clearly challenge the sufficiency of the evidence and thus are meritless at the pleading stage.

The heart of the defendants' attack on the complaint, and the crucial issue posed by this appeal, lies in the defendants' assertion that Chapter 19 as interpreted and applied in this case is unconstitutional. At the outset we point out that "legislative acts are presumed to be constitutional," and, where possible, the Courts will construe the statute to comport with constitutional mandates. State *ex rel. Andrews v. Chateau X, Inc.*, 296 N.C. 251, 260, 250 S.E. 2d 603, 609 (1979), *vacated on*

*other grounds,*        U.S.        , 100 S.Ct. 1593, 63 L.Ed.2d 782
(1980).

**[2]**  The defendants' broad attack splinters into several specific
charges, the first of which requires us to grapple with their
contention that the term "prostitution" is vague and overly
broad.

It is true, as defendants point out, that "prostitution" is not
defined in Chapter 19. Section 19-1 is cross-referenced, howev-
er, to G.S. § 14-203 which deals with criminal prosecution for
prostitution. In section 14-203 "prostitution" is defined "to *in-
clude* the offering or receiving of the body for sexual intercourse
for hire, and ... the offering or receiving of the body for indiscrim-
inate sexual intercourse without hire." [Our emphasis.] While
we believe the latter part of the definition proscribing "indiscrim-
inate sexual intercourse" would raise serious constitutional
questions if attacked as vague and overbroad, [*but see State v.
Demott,* 26 N.C. App. 14, 214 S.E. 2d 781 (1975), which holds,
without discussion, that the section *in toto* is constitutional], it
is not necessary that we face those questions since the conduct
claimed to constitute prostitution in this case obviously acti-
vates only the former category proscribing sexual intercourse
for hire.

A criminal statute will be declared void for vagueness
when, by its proscription, an individual can be held "criminally
responsible for conduct which he could not reasonably under-
stand to be proscribed." *United States v. Harriss,* 347 U.S. 612,
617, 74 S.Ct. 808, 812, 98 L. Ed. 989, 996 (1954). *See also Smith v.
Goguen,* 415 U.S. 566, 94 S. Ct. 1242, 39 L.Ed. 2d 605 (1974);
*Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179
(1973) (*per curiam*); *State v. Lowry,* 263 N.C. 536, 139 S.E.2d 870,
*appeal dismissed and cert. denied,* 382 U.S. 22, 86 S.Ct. 227, 15
L.Ed.2d 16 (1965). But, since few words in the English language
are mathematically precise, we have noted that no more than a
reasonable degree of certainty can be demanded of a criminal
statute. *State v. Martin,* 7 N.C. App. 532, 173 S.E. 2d 47 (1970).
Thus, it is that "[a]ll the Due Process Clause requires is that the
law give sufficient warning that men may conduct themselves
so as to avoid that which is forbidden." *Rose v. Locke,* 423 U.S.

48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185, 188 (1975) (*per curiam*).

We find it inconceivable that persons of ordinary intelligence would have to guess at the meaning of "prostitution." While in our opinion the statute defining "prostitution" could be more precisely written [see *e.g., People v. Block*, 71 Misc. 2d 714, 337 N.Y.S. 2d 153 (1972) (describing and interpreting certain provisions of the Prostitution Article of the Penal Law of New York, especially Penal Law §§ 230.00, 235.20(3), and 245.10(2))], at the very least the statute forbids sexual intercourse for hire. That language is explicit enough. The conduct thus circumscribed could not be more clearly described. *See Adams v. Commonwealth*, 215 Va. 257, 208 S.E.2d 742 (1974), which holds that an attempt to commit prostitution requires an offer to engage in sexual intercourse for pay; *see also Cherry v. State*, 306 A.2d 634 (Md. App. 1973), reported at 77 A.L.R. 3d 507, wherein the Court observed that the term "prostitution," as defined in a provision of that State's criminal code to *mean* the offering or receiving of the body for hire, could not be more precise; *Salt Lake City v. Allred*, 20 Utah 2d 298, 437 P. 2d 434 (1968) ("sexual intercourse for hire" is sufficiently clear to be understood by persons of ordinary intelligence).

Furthermore, reference to the criminal code — *i.e.,* G.S. § 14-203 — is not required to understand what the term "prostitution" means or, in our opinion, what conduct is encompassed within its meaning. We are not inadvertent — and we doubt that few are — to the activity's common, if not accurate, reputation as "the world's oldest profession." The term is precise on its face and gives fair notice of what is forbidden. *Accord, Morgan v. Detroit*, 389 F. Supp. 922 (E.D. Mich. 1975). We decline defendants' invitation to interpret the term so narrowly as to exclude the conduct charged in this record. We hold that prostitution plainly includes the offering or receiving of the body, in return for a fee, for acts of vaginal intercourse, anal intercourse, fellatio, cunnilingus, masturbation, or physical contact with a person's genitals, pubic area, buttocks or breasts. We hasten to add that our cataloguing of these acts of sexual behavior is not intended to exclude other acts of sexual conduct offered or received for pay.

It is clear from the foregoing that, in describing as one type of nuisance a place of business regularly operated or maintained for purposes of prostitution, Chapter 19 is not unconstitutionally vague or overbroad.

[3] Defendants next mount a constitutional challenge to those provisions of Chapter 19 which govern the procedure to be followed to abate the alleged nuisance. Specifically, they charge that G.S. § 19-2.1 permits the State, acting through the district attorney, to deprive individuals of property without due process of law because the State is not required to post a bond as security against the possibility that a temporary restraining order or injunction might erroneously issue. Thus, defendants argue, the statute "constitutes arbitrary and capricious state action."

This Court has noted that a district attorney not only has the authority to maintain an action pursuant to Chapter 19, but also the "implied *duty* to do so as an advocate of the State's interest in the protection of society." State *ex rel. Jacobs v. Sherard*, 36 N.C. App. 60, 63, 243 S.E.2d 184, 187, *cert. denied*, 295 N.C. 466, 246 S.E.2d 12 (1978) [Emphasis added]. That a private citizen is required to post a bond upon instituting a nuisance action under Chapter 19 is in our opinion wholly irrelevant to the issue of the district attorney's authority under the statute to act on behalf of all North Carolina citizens to abate and enjoin activities declared by our law to be nuisances.

Even so, we find the distinction entirely reasonable. As noted above, the district attorney acts for all citizens of this State to promote the general good and to protect the health, safety, morals and welfare of all. *See* State *ex rel. Taylor v. Carolina Racing Association, Inc.*, 241 N.C. 80, 84 S.E.2d 390 (1954); State *ex rel. Carpenter v. Boyles*, 213 N.C. 432, 196 S.E. 850 (1938); State *ex rel. Jacobs v. Sherard, supra.* In these matters the district attorney is often prompted to act by the rumblings of public discontent and often wields the sword of public approval. Furthermore, the district attorney proceeds as an officer of the law and is neither authorized nor expected to act in furtherance of private aims or ambitions. A private citizen, on the other hand, even though authorized to commence an

action pursuant to Chapter 19, might readily and reasonably be expected to act at the instance of wholly private considerations without much regard for the opinion and welfare of the many. At any rate, an individual harkening to the command of purely idiosyncratic concerns over activities he or she deems nuisances might be forgiven more promptly for his or her inattention to the public good. The district attorney, however, has no authority under our laws to proceed, nor should expect forgiveness from our citizens for proceeding, other than in furtherance of the general good. Thus, the provision of the statute requiring a private citizen to post a bond, while the district attorney is not required to do so, is a valid distinction and does not thereby constitute arbitrary and capricious state action.

[4] In passing, we are compelled to observe further that the *institution* of a nuisance action by the district attorney pursuant to section 19-2.1 does not constitute a "taking" of property simply because the district attorney is not required to post a bond along with the filing of the complaint. Defendants' contentions to the contrary are patently meritless. However, defendants also argue that the procedures authorized by G.S. §§ 19-2.2 and 19-2.3, whereby the district attorney upon the filing of the complaint can apply for a preliminary injunction and can seek and obtain a temporary restraining order [TRO], constitute an unconstitutional taking of private property. Defendants strenuously argue this point in view of the fact that no bond is required to protect their interests against the issuing of an erroneous order.

We cannot agree. In the first place ample protection is furnished by the statute itself (§ 19-2.3) which provides in pertinent part as follows:

[T]he Court may, on application ... showing good cause, issue an ex parte temporary restraining order in accordance with G.S. 1A-1, Rule 65(b), preserving the status quo and restraining the defendant and all other persons from removing or in any manner interfering with any evidence specifically described, or in any manner removing or interfering with the personal property and contents of the place where such nuisance is alleged to exist, until the

decision of the court granting or refusing [a] preliminary injunction and until further order of the court thereon.

Any person, firm, or corporation enjoined pursuant to this section may file with the court a motion to dissolve any temporary restraining order.

Such a motion shall be heard within 24 hours of the time a copy of the motion is served on the complaining party, or on the next day the superior courts are open in the district, whichever is later. At such hearing the complaining party shall have the burden of showing why the restraining order should be continued.

... The officer serving such temporary restraining order shall forthwith make and return into court an inventory of the personal property and contents situated in and used in conducting or maintaining such nuisance.

Clearly, the statute does not authorize the seizure or destruction of property, nor do defendants contend such a thing happened. Defendants were merely restrained from removing the property during the life of the TRO. The fact that an inventory of the personal property is mandated has been held a constitutional procedure in that it merely allows an officer to enter a business which is open to the public and make an inventory of items of personal property in plain view. *Fehlhaber v. State,* 445 F. Supp. 130 (E.D.N.C. 1978).

Most significantly, the provision provides plenary protection in these respects: It establishes a procedure for defendants to challenge immediately the validity of the temporary restraining order and places the burden of its continuance solely on the complaining party. We note that these defendants did not attempt to avail themselves of a hearing within 24 hours of the order's issuance, as the statute allows. To the contrary, they did nothing during the life of the TRO. The record reveals that the order was entered and served on 16 January 1979. The inventory was conducted the same day. Yet, the defendants failed to act at all, much less to complain, until some three weeks later when they filed on 5 February 1979 their answer and motion to

dismiss, challenging among other things the constitutionality of the provision which allowed the order to issue. We do not mean to suggest that defendants thereby waived their right to test the constitutionality of the procedure, but their delayed reaction certainly reduces the force of their argument that they were deprived of their property without due process of law. This observation brings us to and interrelates with our second point: The provision is plainly made subject to G.S. § 1A-1, Rule 65(b), which governs as follows the procedure to be followed in issuing temporary restraining orders:

> A temporary restraining order may be granted without notice to the adverse party if it clearly appears from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon. Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the judge fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period. . . .

There is nothing in the record to suggest that the procedure mandated by Rule 65(b) was not followed in every particular. Moreover, the order recites that it expires within 10 days, and no application for an extension of the order appears of record. Presumably then, the order expired on 26 January 1979, some 10 days before the defendants made an appearance in the action. Although the plaintiff gave notice that he would seek a hearing on his application for a preliminary injunction on 26 January 1979, according to the record he took no action pursuant to that notice. It appears, then, that from the expiration of the TRO on 26 January 1979 until the trial of the matter on the merits on 5 February 1979, defendants were free to use and dispose of their property as they saw fit. We fail to perceive how they were injured in being unable to remove that property from the premises from 16 January until 26 January, especially in

light of the fact that they had an avenue to contest the validity of the TRO immediately upon its issuance.

Moreover, the ex parte temporary restraining order serves the sole purpose of preserving the status quo until a hearing can be had. *Lambe v. Smith,* 11 N.C. App. 580, 181 S.E.2d 783 (1971). The procedure neither contemplates nor authorizes the deprivation of property and, so long as certain procedural safeguards are afforded (such as definite duration), it is a universally accepted and employed procedure. *See generally* D. Dobbs, *Remedies* § 2.10 (1973); Fed. R. Civ. Pro. 65. Thus, although the procedure is drastic, it operates within an emergency context which recognizes the need for swift action, but passes constitutional muster because it immediately affords defendants notice and an opportunity to be heard. It follows that defendants' assertion that Chapter 19 violates due process because it "permits the Court to restrain defendants without notice" is wholly without merit. For the same reasons, we reject the defendants' contentions that the procedure denies them the equal protection of the law.

**[5]** Defendants next would engage us in skirmishes on constitutional grounds with respect to the manner of proving and the quantum of proof required to establish that the activity alleged to be a nuisance ought to be enjoined. They argue first that section 19-3(c) which allows the admission into evidence of the general reputation of the building or place allegedly constituting a nuisance "permits an unconstitutional taking of property in a trial by rumor, hearsay, and innuendo," and denies them their right of cross-examination. Our Supreme Court has previously upheld this provision of Chapter 19, State *ex rel. Carpenter v. Boyles, supra,* and we are in complete accord with the holding in that decision that such evidence is admissible. Moreover, the record shows that defendants vigorously cross-examined the State's witnesses who testified regarding the reputation of the Par-A-Dice as to the basis for their testimony. We find no merit in this argument.

Second, defendants contend the statute is unconstitutional because it requires only that the allegations of the complaint be "sustained to the satisfaction of the court," *at a hearing upon*

*an application for a preliminary injunction.* G.S. § 19-2.5. While we have no doubts that the quantum of proof comports with constitutional requirements, we do not confront the question since the record indicates that no action was taken pursuant to an application for a preliminary injunction, if indeed one was made. As we noted above, according to the record, after the issuance and expiration of the temporary restraining order, the matter came on for a full and final hearing on the merits before a jury. The provision of the statute now attacked by defendants was never called into play, and they therefore have no reason to complain.

[6] Finally, defendants challenge the constitutionality of Chapter 19 on the ground that it "has such a 'chilling' effect as to deny the owner and his invitees the right to meet, socialize, and assemble ..." We do not believe the freedom of association guaranteed by the First Amendment to the U.S. Constitution was intended to extend to association for purposes of prostitution, and we so hold.

In sum, with respect to all arguments raised by defendants, we hold that the trial judge properly denied the motion to dismiss the action.

[7] The next major question posed by this appeal challenges the sufficiency of the evidence to be submitted to the jury. Defendants thus assert that the judge erred in denying their "motion to dismiss" at the close of the evidence.

Again, we have no trouble disagreeing with defendants' position. The evidence for plaintiff is plenary and in brief establishes the following:

During a two-year period from 30 July 1976 to 30 July 1978, at least seven different police officers dressed in civilian clothes and visited the Par-A-Dice Health Clinic. As a matter of course upon entering the building, the officer would be approached by a female employee who would inquire what he wanted. She would describe the types of massages available, quote prices, and lead him to a room equipped with a table and mirrors. He would be told to undress. Thereafter, the same or a different

female would come to the room and begin the massage. She would attempt to ascertain whether the customer was a police officer by asking questions about his occupation and requesting to see some identification. On at least seven occasions investigated by these officers, the masseuse was apparently satisfied that the customer was not a police officer for the officers made seven arrests for seven separate solicitations for acts of intercourse or crime against nature. Each such solicitation was offered in return for a fee which ranged from $30 to $80. Additionally, at least two arrests were made for acts of masturbatory massage. As this opinion makes clear, each act solicited in this record is included within the definition of "prostitution."

Moreover, twelve police officers testified that the Par-A-Dice Health Clinic had a reputation as a house of or "front" for prostitution. The testimony of several officers showed that most of the females arrested for solicitation posted bond and returned to work at the Par-A-Dice.

Defendants offered no evidence. Thus, on this record there is no evidence that the Par-A-Dice Health Clinic was used for any lawful business purpose, even that of a legitimate massage parlor. Rather, all the evidence tends to show that the Clinic was operated in the regular course of business solely for purposes of prostitution. At least the jury could so find.

Defendants argue, however, that the evidence is insufficient because only two of the acts charged in this record occurred after the effective date of the present nuisance statute, G.S. § 19-1 et seq. While it is true that Chapter 19 was amended by 1977 Session Laws, c. 819, the amendments primarily affected only certain provisions relating to obscenity. The inclusion of houses of prostitution under the umbrella of public nuisance law has existed at least since 1913, and the statutory language of Chapter 19 defining the business of prostitution as a nuisance has survived relatively unchanged. Defendants' contentions that the nuisance statute does not cover acts of prostitution commited prior to 1 August 1977, the effective date of the latest amendments, hardly deserve discussion.

We hold the trial judge correctly denied the defendants'

motion for a directed verdict and properly submitted this case to the jury.

Defendants have also challenged the court's denial of their motion to strike a portion of the pleadings and their motion for instructions on the meaning of the verb "satisfied." Suffice it to say that we have reviewed defendants' arguments with respect to each of these assignments of error and find them devoid of merit. We affirm the rulings of the trial judge in each instance.

[8] Next, defendants assign error to the court's allowance of attorneys' fees and referee's fees, arguing that the amounts awarded were "exorbitant and unreasonable." G.S. § 19-8 authorizes the payment of costs to the prevailing party in a nuisance abatement proceeding, including "such fee for the attorney . . . as may in the court's discretion be reasonable remuneration for the services performed by such attorney." G.S. § 19-6 authorizes an accounting to be ordered and provides in pertinent part that the costs of abatement "include, but are not limited to, reasonable attorney's fees. ..." Clearly, fees awarded to the plaintiff's attorneys and to the court-appointed referee in this case were a matter within the court's discretion, and, absent an abuse of that discretion, such amounts will not be disturbed on appeal. State *ex rel. Bowman v. Fipps*, 266 N.C. 535, 146 S.E.2d 395 (1966).

The judgment entered herein upon the verdict of the jury that the Par-A-Dice Health Clinic constituted a nuisance documents in detail those factors considered by the judge in arriving at a fee of $4,000 for plaintiff's attorney. Specifically, the judge found as a fact that counsel for plaintiff had represented the State throughout the proceeding, "including the investigation of the original allegations dating back to November 1978, research, the preparation of all pleadings, the appearance at two previous hearings in this cause, and the preparation for trial and three full trial days with his Associate, ..." These findings are sufficient to support the award and affirmatively demonstrate its reasonableness. With respect to the award of an additional attorney's fee and referee's fees, the order entered 5 September 1979 recites the number of hours spent by both parties in conducting the accounting procedure and preparing

the referee's report. Again the order affirmatively demonstrates the basis for the reasonableness of the fees awarded. We hold that defendants have failed to show an abuse of the courts' discretion, and thus the ruling allowing the fees will not be disturbed.

[9] Finally, defendants attack the adoption by the trial court of the referee's report. They argue that the inclusion of gross income received at the Par-A-Dice prior to 1 August 1977, the effective date of the amended version of G.S. § 19-6 which authorizes the accounting procedure, "is so arbitrary and capricious as to violate, clearly, due process of law." They cite no authorities in support of their position. Nor, as plaintiff points out, did they object to the report and note exceptions thereto when it was filed, as provided for in G.S. § 1A-1, Rule 53(g)(2). In *Coburn v. Roanoke Land and Timber Corp.*, 257 N.C. 222, 226, 125 S.E.2d 593, 596 (1962), our Supreme Court discussed the purpose fulfilled by the exceptions to a referee's report, and stated: *"[I]n the absence of exceptions to the factual findings of a referee, such findings are conclusive ...*, and where no exceptions are filed, the case is to be determined upon the facts as found by the referee." [Emphasis in original.] Thus, in the present case the facts found by the referee respecting the gross income of the Par-A-Dice are conclusive and support the judgment entered thereon.

The judgments appealed from in all respects are affirmed.

Affirmed.

Judges PARKER and VAUGHN concur.