WILSON FORD TRACTOR v. MASSEY-FERGUSON, INC.

[105 N.C. App. 570 (1992)]

WILSON FORD TRACTOR, INC., PLAINTIFF-APPELLANT v. MASSEY-FERGUSON, INC., DEFENDANT-APPELLEE v. THURMAN ALLEN BASS AND WIFE, BARBARA D. BASS, ADDITIONAL PARTY DEFENDANTS-APPELLANTS

No. 917SC398

(Filed 3 March 1992)

1. **Statutes § 8.1 (NCI3d)— Farm Machinery Franchise Act—no retroactive application**

    The Farm Machinery Franchise Act applied only to franchise agreements created after 1 October 1985 and was therefore inapplicable to this action arising from the termination of a franchise agreement entered into more than two years prior to the effective date of the legislation.

    **Am Jur 2d, Statutes § 347.**

2. **Reference § 7.1 (NCI3d)— exceptions—no question presented for review**

    In an action for breach of contract arising from the termination of a farm machinery franchise, plaintiff failed to show that the trial court erred by adopting the referee's proposed findings of fact and conclusions of law where plaintiff merely alleged that the referee improperly failed to find certain facts favorable to its position, and such exceptions did not present any question to the trial court for review.

    **Am Jur 2d, References §§ 38, 40.**

APPEAL by plaintiff and additional party defendants from *Brown (Frank R.), Judge.* Judgment entered 19 November 1990 in the Superior Court, WILSON County. Heard in the Court of Appeals on 19 February 1992.

Plaintiff Wilson Ford Tractor, Inc. (hereinafter "Wilson Ford Tractor") instituted this civil action against defendant Massey-Ferguson, Inc. (hereinafter "Massey-Ferguson") alleging that defendant had breached a contract concerning a farm machinery franchise held by plaintiff until its termination on 18 November 1985. In the complaint, Wilson Ford Tractor alleged that the dealership termination was governed by the terms and conditions of the Dealer Sales and Service Agreement signed by the parties on 30 March 1983 (hereinafter the "Agreement") and by the Farm Machinery Franchise Act, G.S. 66-180 *et seq.* (hereinafter the "Fran-

chise Act"). Plaintiff complained that the accounting by defendant of amounts due plaintiff upon termination of the franchise violated the terms of both the Agreement and the Franchise Act.

Defendant counterclaimed alleging that its accounting established that the combined balances of plaintiff's various accounts with Massey-Ferguson exceeded the amounts due plaintiff by defendant pursuant to the repurchase requirements of the Agreement. Massey-Ferguson also alleged that the Franchise Act did not govern this termination due to the fact that the statute became law after the Agreement was signed by the parties. Thurman and Barbara Bass, who had personally guaranteed the accounts of Wilson Ford Tractor, were made additional party defendants to the action for the purposes of defendant's counterclaim.

Subsequent to discovery, the trial court entered partial summary judgment against Wilson Ford Tractor, ruling that the Franchise Act did not apply to this lawsuit. The court further ordered, pursuant to Rule 53 of the North Carolina Rules of Civil Procedure, that referee William R. Rand determine a proper accounting pursuant only to the provisions of the Agreement. The referee conducted an evidentiary hearing and thereafter presented proposed Findings of Fact and Conclusions of Law to the trial court.

The trial judge reviewed the record of the proceedings before the referee and adopted the proposed Findings of Fact. Based upon those findings, the court concluded that Wilson Ford Tractor was not entitled to recover any amount from the defendant and that Massey-Ferguson was entitled to recover $344.62 on its counterclaim against plaintiff and its crossclaim against Mr. and Ms. Bass.

Plaintiff and additional party defendants Bass appealed.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Robin K. Vinson, for plaintiff, appellant and additional party defendant, appellants.*

*Everett, Everett, Warren & Harper, by Edward J. Harper, II, and Ryal W. Tayloe, for defendant, appellee.*

HEDRICK, Chief Judge.

The undisputed facts show that Wilson Ford Tractor and Massey-Ferguson entered into a franchise agreement on 30 March 1983. Pursuant to the Agreement, plaintiff became a retail dealer

WILSON FORD TRACTOR v. MASSEY-FERGUSON, INC.

[105 N.C. App. 570 (1992)]

of Massey-Ferguson farm equipment, implements, machinery, attachments and repair parts. On 15 October 1985, plaintiff notified Massey Ferguson by letter of its intent to terminate the franchise arrangement effective 18 November 1985. Pursuant to the Agreement, upon termination of the franchise relationship, Massey-Ferguson was obligated to repurchase from the dealer all new and unused Massey-Ferguson equipment, implements and parts which had been purchased by plaintiff from defendant and which were remaining in plaintiff's inventory at the time of termination. The Agreement specified the purchase price for each item and allowed for the deduction from that price of amounts due and owing to Massey-Ferguson on the accounts of Wilson Ford Tractor at the time of the termination.

The Franchise Act became effective on 1 October 1985. That statute regulates the termination and non-renewal of farm machinery and implement franchises and requires a manufacturer to repurchase the inventory of a dealer upon termination of a franchise. The Franchise Act defines the inventory which must be purchased and specifically sets forth the prices to be paid by the manufacturer and the time within which the repurchase must be completed. G.S. 66-184. The Act also allows a credit to the manufacturer for amounts owed to it by the dealer at the time of the termination. *Id.*

[1] Plaintiff first argues that the trial court erred by granting partial summary judgment in favor of defendant by ruling that the Franchise Act did not apply to plaintiff's lawsuit as a matter of law. We will, at this point, reference the fact that the appellants have failed to abide by our Rules of Appellate Procedure in that there are no assignments of error set out in their brief as required by Rule 28(b)(5). Although we would, therefore, according to that rule, be justified in ruling that the appellants have abandoned all assignments of error, we will nevertheless exercise our discretion and review the questions set out in the brief.

Plaintiff contends that the Franchise Act should apply to the termination of this Agreement despite the fact that the contract between the parties was signed more than two years prior to the effective date of this legislation. Plaintiff cites the "imminently clear" intent of the General Assembly to correct the abuses by manufacturers in connection with farm franchise terminations as support for the argument that the entire statute should be given a retroactive application.

## WILSON FORD TRACTOR v. MASSEY-FERGUSON, INC.

[105 N.C. App. 570 (1992)]

It is a well established principal of law in this State that a statute is presumed to have prospective effect only and should not be construed to have a retroactive application unless such an intent is clearly expressed or arises by necessary implication from the terms of the legislation. *In re Mitchell*, 285 N.C. 77, 79-80, 203 S.E.2d 48, 50 (1974); *Smith v. Mercer*, 276 N.C. 329, 172 S.E.2d 489 (1970); *In Re Estate of Proctor*, 79 N.C. App. 646, 649, 340 S.E.2d 138, 141 (1986). Our Supreme Court has stated that "every reasonable doubt should be resolved against a retroactive operation of a statute." *Hicks v. Kearney*, 189 N.C. 316, 319, 127 S.E.2d 205, 207 (1925).

The Franchise Act is silent as to the issue of retroactivity, stating only that it "shall become effective October 1, 1985." Plaintiff contends, however, that, as the exclusive purpose of the Act is to govern franchise terminations and not to affect any "core expectation" of the contract itself, the intent for retroactive application is "inherent" in the terms of the statute. According to plaintiff and defendants Bass, the Franchise Act should be applicable to all franchise terminations occurring after the effective date of the legislation.

The Franchise Act very clearly regulates the termination of farm equipment franchise agreements. The Act also, however, imposes substantial warranty obligations upon a supplier which could arise at any time during the contractual relationship. The Act provides:

(a) Whenever a supplier and a dealer enter into a franchise agreement, the supplier shall pay any warranty claim made by the dealer for warranty parts or service within 30 days after its approval. The supplier shall approve or disapprove a warranty claim within 30 days after its receipt. If a claim is not specifically disapproved in writing within 30 days after its receipt it is approved and payment must follow within 30 days.

(b) Whenever a supplier and dealer enter into a franchise agreement, the supplier shall indemnify and hold harmless the dealer against any judgment for damages or any settlement agreed to by the supplier, including court costs and a reasonable attorney's fee arising out of a complaint, claim, or lawsuit

including negligence, strict liability, misrepresentation, breach of warranty, or . . . other conduct beyond the dealer's control.

G.S. 66-187.

It cannot be said therefore that the Franchise Act deals exclusively with the termination of franchise contracts. There is no indication in either the express language set out above or in the necessary application of the statute that the General Assembly intended that the warranty obligations created by the Act should apply to franchise agreements created prior to the Act's effective date. Without the expression of such an intent, the entire statute must be interpreted as applying only to franchise agreements created after 1 October 1985. The trial judge properly concluded that the Franchise Act has no application to the facts of this case.

[2] The appellants next contend the trial court erred by adopting the referee's proposed Findings of Fact and Conclusions of Law. Again we will point out that the appellants have failed to abide by the unambiguous requirements of Rule 28(b)(5) of the Rules of Appellate Procedure. Not only do they fail to set forth the assignments of error pertinent to this question, there is no authority cited in the brief in support of the appellants' contentions. Such failures will generally result in this Court ruling all relevant assignments of error abandoned. *Id.*

We will nevertheless set forth our conclusion that the appellants' second argument also lacks merit. The referee's report to the trial judge sets forth numerous findings concerning the various amounts due to each party and concluded that plaintiff's debts to defendant exceeded the amounts owed by defendant for the repurchase of plaintiff's inventory. The trial court reviewed the record of the proceedings before the referee and each proposed exception filed by plaintiff and defendants Bass. Those exceptions consisted of plaintiff and defendants Bass' allegation that the referee improperly failed to find certain facts favorable to their position, and of the simple statement that "exception is taken" to each proposed finding and conclusion. The court overruled each purported exception by concluding that all of the objections to the failure of the referee to find certain facts were "untenable" and that the remaining exceptions were unacceptably "nonspecific" and "broadside."

Exceptions predicated simply upon the contention that a referee failed to find certain facts are improper and do not present any question to the trial court for review. *Murphy v. Smith*, 235 N.C. 455, 70 S.E.2d 697 (1952); *Tilly v. Bivens*, 110 N.C. 343, 14 S.E. 111 (1892). Exceptions must specifically identify an alleged error. *Godwin v. Hinnant*, 250 N.C. 328, 108 S.E.2d 658 (1959); *Cooper v. Middleton*, 94 N.C. 86 (1886). The Court in *Godwin* explained:

> The statute providing for a compulsory reference, when it appears an accounting is necessary to determine the rights of the parties, rests on the assumption that this procedure will eliminate items not controverted and will enable the parties, by appropriate exceptions to the referee's findings, to bring into sharp focus the items which are in controversy.
>
> . . . A dissatisfied party is not permitted to take broadside exceptions to the findings. His exceptions, to be helpful and therefore effective in a just settlement of the controversy—the court's objective, must be both specific and directed to a particular finding of fact.

250 N.C. at 332, 108 S.E.2d at 661 (citations omitted).

The trial court properly concluded that the exceptions filed failed to present any issue for the court's review. Without effective exceptions to the factual findings of the referee, those findings are conclusive. *State ex rel. Gilchrist v. Hurley*, 48 N.C. App. 433, 452, 269 S.E.2d 646 (1980), *disc. review denied*, 301 N.C. 720, 274 S.E.2d 233 (1981); *Bank v. Graham*, 198 N.C. 530, 152 S.E.2d 493 (1930); *State ex rel. Gilchrist v. Cogdill*, 74 N.C. App. 133, 327 S.E.2d 647 (1985).

A decision by the trial court to adopt a referee's factual findings will not be disturbed by this Court if there is any evidence in the record to support those findings. *Whitaker v. Earnhardt*, 289 N.C. 260, 221 S.E.2d 316 (1976); *Hall v. Fayetteville*, 248 N.C. 474, 103 S.E.2d 815 (1958); *Spruce Co. v. Hayes*, 169 N.C. 254, 85 S.E. 382 (1915). Plaintiff and defendants Bass do not indicate that any particular factual finding by the referee lacked an evidentiary basis. Rather, they argue only that further evidence presented supported their position. The judgment of the trial court may not be attacked on such grounds. *In re Montgomery*, 311 N.C. 101, 316 S.E.2d 246 (1984); *Rose v. Vulcan Materials Co.*, 282 N.C. 643,

194 S.E.2d 521 (1973); *Blackwell v. Butts*, 278 N.C. 615, 180 S.E.2d 835 (1971).

Both the order of the trial court granting partial summary judgment in favor of defendants and the final judgment in favor of defendants are affirmed.

Affirmed.

Judges ORR and WALKER concur.